IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-335-D |
| ) | |
| VIRTUAL BENEFITS GROUP INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **O R D E R**

Before the Court are Motions to Dismiss of Defendant Blue Cross and Blue Shield of Texas ("BCBS") [Doc. No. 12] and United HealthCare Services, Inc. ("UHC") [Doc. No. 19] filed pursuant to Fed. R. Civ. P. Rule 12(b)(6). The movants seek dismissal of the action against them on the ground that Plaintiff's petition [Doc. No. 1-5], which will be referred to as the complaint, fails to state a plausible claim.[1] Plaintiff Charles Wilson has timely opposed the Motions. *See* Pl.'s Resp. BCBS's Mot. [Doc. Nos. 24]; Pl.'s Resp. UHC's Mot. [Doc. No. 29]. The Motions are fully briefed and ripe for decision.[2]

### **Factual Background**

Plaintiff began this action in state court on March 14, 2019, complaining about the denial of health insurance benefits under group policies that he had purchased through

---

[1] The movants also argue that Plaintiff has not pleaded any fraud claim with the particularity required by Fed. R. Civ. P. 9(b). For reasons discussed *infra*, the Court need not reach this issue.

[2] BCBS filed an opening brief [Doc. No. 13] and reply brief [Doc. No. 28]. UHC combined a supporting brief with its Motion, and filed a reply brief [Doc. No. 34].

Virtual Benefits Group Inc. ("VBG"), "a brokerage company for health insurance." *See* Compl. ¶ 1.[3] Plaintiff claims that VBG collected insurance premiums by monthly drafts from his bank checking account but that the insurers who issued the policies, UHC and BCBS, denied coverage that should have been provided by the policies. Although the relief sought is not entirely clear, Plaintiff seems to assert that UHC or BCBS (or both) should be required to provide insurance coverage for his past and future health expenses (*id*. ¶¶ 6-7) and that he should recover damages for "bodily injury due to the denial of policy benefits," "pain and mental anguish," and "consequential monetary damages." *Id*. ¶ 8. UHC and BCBS timely removed the action to federal court on April 12, 2019, based on federal diversity jurisdiction.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. The court "accepts as true all well-pleaded factual allegations" and views them "in the light

---

[3] VBG has now been identified as a limited liability company, Virtual Benefits Group, LLC, whose sole member is a Texas resident, Lisa Williams. *See* Disclosure Statement [Doc. No. 50].

most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018); *see Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("all well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true," and all reasonable inferences must be made in plaintiff's favor) (emphasis in original; internal quotation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**Plaintiff's Allegations**

The Complaint states that the individual defendants, John Oliver and Lois Oliver, "were the managing members" of VBG, that John Oliver was licensed by the Oklahoma Insurance Commission as a health insurance producer, and that his license was "effective from June 15, 2012, until June 1, 2016." *See* Compl. ¶ 1. Plaintiff allegedly selected a UHC healthcare plan "through VBG and its agents," and submitted an application for coverage to VBG on March 23, 2017. *Id*. "VBG, through its agents, advised Plaintiff that his effective date of coverage was April 1, 2017, Group No. 904078 and monthly premium payments of $604.10 would be drafted from his checking account." *Id*. Then on February 24, 2018, VBG advised Plaintiff that "his coverage was placed with [BCBS], Group No. 236722" and "monthly premium payments in the amount of $660.10 would be drafted from the same checking account." *Id*. ¶ 2. VBG collected premiums from Plaintiff's bank account each month starting March 2017 through December 2017 and from February 2018 through April 2018. *Id*. ¶ 4.

Plaintiff states, however, that he received a telephone call from UHC in April 2018 informing him that UHC would not pay his prescription drug bills from October 2017 through January 2018 totaling $2,151.84 because his coverage had ended September 30, 2017. *Id*. ¶ 3. "Plaintiff tried to contact VBG about the unpaid prescription bills, by phone, but the phone number was disconnected." *Id*. ¶ 4. Plaintiff also sent an email message but received a reply stating that VBG's offices closed April 1, 2018, and the "email address was no longer active." *Id*. "BCBS honored its policy with Plaintiff only from February 1, 2018 through April 30, 2018." *Id*. ¶ 2.

The alleged misconduct of Defendants is described in the Complaint as follows:

> Defendants VBG, John Oliver, and Lois Oliver acted willfully, wantonly, . . . maliciously, and with intent to defraud Plaintiff, by collecting Plaintiff's premiums while frustrating Plaintiff's attempt to obtain the benefits of his coverage. Additionally or alternatively, Defendants VBG, John Oliver, and Lois Oliver owed Plaintiff a duty of good faith and fair dealing, and a duty to disclose the facts of BCBS's and UHC's assertions of non-coverage, as well as a duty to disclose that Defendants VBG, John Oliver, and Lois Oliver apparently failed to remit Plaintiff's premiums to Defendants BCBS and UHC. Defendants VBG, John Oliver, and Lois Oliver thereby gained an advantage to themselves, while acting as agents for Defendants BCBS and UHC, by retaining and converting premiums and seeking to avoid the financial and reputational costs of their failures. <u>The breaches by Defendants VBG, John Oliver, and Lois Oliver of their duties to Plaintiff operated to the prejudice and detriment of Plaintiff, who was deprived of the benefits of the coverage for which Plaintiff paid.</u>

Compl. ¶ 5 (emphasis added). Plaintiff's alleged injuries flowing from this conduct are: UHC and BCBS have denied coverage for a "need[ed] heart surgery with an estimated cost of $250,000;" "Plaintiff is likely to suffer irreparable harm (including the potential for worsened illness and even death) if Defendants UHC and BCBS fail to provide policy benefits;" and "Plaintiff has suffered and will suffer bodily injury due to the denial of policy

4

benefits," "pain and mental anguish," and "additional consequential monetary damages," including increased costs of medical services that he has and will procure at higher-than-contract rates." *Id*. ¶¶ 6-8.

## Discussion

The quoted paragraph, and especially the emphasized sentence, make clear that any liability of UHC and BCBS is based solely on the conduct of others. Plaintiff does not allege any direct contact with either insurer, except a telephone call from UHC to explain a denial of coverage for certain bills. Instead, Plaintiff seeks to hold the insurers liable for the conduct of VBG and the individual defendants "while acting as agents for Defendants BCBS and UHC." *Id*. ¶ 5. This conclusory phrase, unsupported by any factual allegations that might create an agency relationship between BCBS or UHC and another defendant, is insufficient to state a plausible claim of vicarious liability. *See Christiana Trust v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) (vicarious liability "requires pleading facts that suggest an agency relationship").[4]

In his response briefs, Plaintiff offers two legal theories of UHC's and BCBS's liability based on: 1) a provision of the Oklahoma Insurance Code, Okla. Stat. tit. 36, § 1435.3(A), that requires an insurance producer to "be regarded as representing the insurer

---

[4] "An agency relationship generally exists if two parties agree one is to act for the other. An essential element of an agency relationship is that the principal has some degree of control over the conduct and activities of the agent." *McGee v. Alexander*, 37 P.3d 800, 807 (Okla. 2001) (citing *Garrison v. Bechtel Corp.*, 889 P.2d 273 (Okla. 1995)); *accord Clark v. Colbert*, 895 F.3d 1258, 1266 (10th Cir. 2018); *see also Texaco, Inc. v. Layton*, 395 P.2d 393, 397 (Okla. 1964) (*respondeat superior* liability requires a right or ability of the principal to control "the actions of the subordinate in respect to the transaction out of which the injury arose").

5

and not the insured" in a controversy between the insured and the insurer; and 2) "the apparent authority created e.g. when John Oliver procured a policy for [Plaintiff's] benefit from BCBS" or UHC, and collected premiums on the insurer's behalf. *See* Pl.'s Resp. BCBS's Mot. [Doc. No. 24] at 6; Pl.'s Resp. UHC's Mot. [Doc. No. 29] at 8. Although UHC and BCBS challenge these theories, they do not disagree with Plaintiff's reliance on Oklahoma substantive law. Thus, for purposes of this Order, the Court also assumes that Oklahoma law controls the liability issues.[5]

A. **Statutory Liability**

The first theory argued by Plaintiff relies on the effect of a "deeming statute" included in the Oklahoma Producer Licensing Act, Okla. Stat. tit. 36, §§ 1435.1 to 1435.41. *See* Pl.'s Resp. BCBS's Mot. [Doc. No. 24] at 3.[6] By its terms, the "deeming statute" applies to "[e]very insurance producer . . . who solicits or negotiates an application for insurance of any kind." *See* Okla. Stat. tit. 36, § 1435.3(A).[7] Plaintiff does not address

---

[5] UHC and BCBS both complain that Plaintiff's arguments in his response briefs incorporate new or different facts from the allegations of his pleading. He states, for example, that "BCBS delivered a policy to Wilson" and "VBG was an Insurance Producer licensed in Oklahoma at the time of the transaction." *See* Pl.'s Resp. BCBS's Mot. [Doc. No. 24] at 1, 2; Pl.'s Resp. UHC's Mot. [Doc. No. 29] at 3. Applying the standard of decision, all such arguments are disregarded.

[6] Because Plaintiff presents identical arguments in both response briefs, only the first is cited in this discussion.

[7] Section 1435.3 states:

A. Every insurance producer, customer service representative, or limited lines producer who solicits or negotiates an application for insurance of any kind shall, in any controversy between the insured or the insured's beneficiary and the insurer, be regarded as representing the insurer and not the insured or the insured's beneficiary. This provision shall not affect the apparent authority of an insurance producer.

whether the "insurance producer" in this case is VBG, John Oliver, or Lois Oliver under the factual circumstances alleged in the Complaint. Plaintiff appears to argue in his brief that it applies to all of them "by virtue of John Oliver's licensure as Insurance Producer." *See* Pl's Resp. Br. BCBS's Mot. at 6; *see also id*. at 2 (arguing that John Oliver was the insurer's agent by statute).

Upon consideration, the Court finds insufficient factual allegations to support Plaintiff's theory of statutory liability. First, the Complaint states that John Oliver was licensed in Oklahoma as a health insurance producer from June 2012 until June 1, 2016. Taken as true, John Oliver was not a licensed insurance producer when Plaintiff submitted his insurance application to VBG for coverage in 2017. *See* Compl. ¶ 1. Second, while the "deeming statute" is not limited to licensed producers, the Oklahoma Producer Licensing Act defines "insurance producer" to mean "a person required to be licensed under the laws of this state to sell, solicit or negotiate insurance." *See* Okla. Stat. tit. 36, § 1435.2(7). Plaintiff does not identify facts from which to conclude that VBG, John Oliver, or Lois Oliver was required to be licensed in Oklahoma.[8] Upon examination of the Complaint, the Court finds insufficient facts to state a plausible claim that any of the alleged agents – VBG, John Oliver, nor Lois Oliver – was covered by the "deeming statute" at the relevant time.

---

[8] For example, the Oklahoma Producer Licensing Act provides a number of statutory exceptions, including "[a] person who secures and furnishes information for the purpose of group . . . health insurance." *See id*. § 1435.5(B)(2). In his pleading, Plaintiff identifies each of the health insurance policies at issue by "Group No." *See* Compl. ¶¶ 1-2.

Further, Plaintiff provides no legal authority to support his expansive reading of the "deeming statute." None of the case law cited in Plaintiff's discussion of this theory involved the statute; he relies solely on his reading of its text. *See* Pl's Resp. Br. BCBS's Mot. at 3-4. Under Plaintiff's argument, the statute would place liability on an insurer for any conduct committed by an insurance producer who had been involved in soliciting or negotiating an insurance application. UHC and BCBS persuasively argue, with citations of pertinent authority, that the statute is more limited in scope. *See Nat'l Life & Accident Ins. Co. v. Cudjo*, 304 P.2d 322, 325 (Okla. 1956) ("a soliciting agent is insurer's agent in taking applications, and . . . his acts and information received, and acted upon by him in connection with applications, in the absence of fraud, are binding upon the insurer"); *Warner v. Continental Cas. Co.*, 534 P.2d 695, 698 (Okla. Civ. App. 1975) ("acts performed by a 'soliciting agent' and knowledge received by him in the course of soliciting applications may be binding on the insurer"). The Court finds that Plaintiff has failed to show that the Oklahoma statute would operate to hold UHC and BCBS liable for the alleged fraudulent conduct of VBG, John Oliver and Lois Oliver in this case.

**B.     Apparent Authority**

Plaintiff's second theory is based on the common law agency principle of apparent authority. Oklahoma law is clear that "[a]pparent authority results from manifestations by the principal (here [BCBS or UHC]) to the third party (here [Plaintiff]) that another person is his agent." *Wheeler v. Puritan Ins. Co.*, 720 P.2d 729, 731 (Okla. 1986). "Apparent agency develops from the acts of the principal himself and not from the acts of the agent." *Id.*; *see also Bayless v. Christie, Manson & Woods Int'l, Inc.*, 2 F.3d 347, 354 (10th Cir.

8

1993) ("apparent authority cannot be established solely by the conduct of the agent"). Plaintiff's arguments in support of apparent authority are based solely on the conduct of VBG, John Oliver, and Lois Oliver. *See* Pl's Resp. Br. BCBS's Mot. at 6 (Plaintiff interacted only "with VBG and the Olivers" and "apparent authority [was] created e.g. when John Oliver procured a policy for [Plaintiff's] benefit from BCBS [and] . . . collected premiums on BCBS's behalf"). The Court finds in the allegations of the Complaint no facts that would establish the apparent authority of VBG, John Oliver, or Lois Oliver, to bind UHC and BCBS to provide group health insurance coverage for which premium payments were not received by the insurer. Therefore, the Court finds that Plaintiff's complaint fails state a plausible claim against UHC or BCBS for the conduct of others under a theory of apparent authority.

**Conclusion**

For these reasons, the Court finds that Defendants UHC and BCBS are entitled to the dismissal of Plaintiff's action against them for failure to state a plausible claim upon which relief can be granted. The Court further finds that the dismissal should be without prejudice to a timely motion by Plaintiff under Fed. R. Civ. P. 15(a)(2) and LCvR15.1, to file an amended complaint, if he can do so consistent with Fed. R. Civ. P. 11.[9]

---

[9] The Court notes that in response to a jurisdictional motion filed by VBG and Lois Oliver, Plaintiff has provided factual materials that show his dealings with VBG and Lois Oliver occurred through an employee of one of his companies, Brenda Moore, and that he was offered group health insurance through a trade association, American Recovery Association, headquartered in Irving, Texas. *See* Moore Aff. [Doc. No. 51-1]. VBG has provided evidence that it was the insurance broker for an administrative services organization that contracted with American Recovery Association to provide certain services, which included participation in its group health insurance plan. *See* Williams Aff. [Doc. No. 47-1]. No facts that might create vicarious liability of UHC or BCBS for the conduct of VBG, Lois Oliver, or John Oliver are apparent.

IT IS THEREFORE ORDERED that Defendant Blue Cross and Blue Shield of Texas's Motion to Dismiss Plaintiff's Petition [Doc. No. 12] and Defendant United HealthCare Services, Inc.'s Motion to Dismiss [Doc. No. 19] are GRANTED. Plaintiff's action against these defendants is dismissed without prejudice to his filing a motion to amend his pleading, if appropriate, within 14 days from the date of this Order.

**IT IS SO ORDERED** this 21st day of February, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge