IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLES WILSON, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-19-335-D
 )
VIRTUAL BENEFITS GROUP INC., )
*et al.*, )
 )
    Defendants. )

## **O R D E R**

Before the Court is Defendants Virtual Benefits Group, LLC's and Lois Oliver's Motion to Dismiss [Doc. No. 47], filed pursuant to Fed. R. Civ. P. 12(b)(2).[1] The movants assert that this Court lacks jurisdiction over them because they are nonresident defendants with insufficient contacts to the State of Oklahoma to satisfy due process. The Motion is supported by an affidavit of Lisa Williams, the sole member and manager of Virtual Benefit Group, LLC ("VBG") [Doc. No. 47-1],[2] and an affidavit of Defendant Lois Oliver [Doc. No. 47-2]. Plaintiff Charles Wilson has filed a response brief [Doc. No. 51] supported by

---

[1] The Motion also seeks dismissal under Rule 12(b)(6) and Rule 9(b). However, the jurisdictional issue must be decided as a threshold matter. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[2] VBG was initially named in the pleadings as a corporation, but it has now been identified as a limited liability company, whose sole member is Lisa Williams. *See* Disclosure Statement [Doc. No. 50]. Plaintiff does not dispute this clarification of VBG's identity.

an affidavit of an employee, Brenda Moore [Doc. No. 51-1]. The Motion is fully briefed and ripe for decision.[3]

### Factual and Procedural Background

Plaintiff began this action in state court on March 14, 2019, complaining about a lack of health insurance coverage under group policies that he had purchased through VBG, "a brokerage company for health insurance." *See* Compl. [Doc. No. 1-5] ¶ 1.[4] Plaintiff claims that VBG collected insurance premiums by monthly drafts from his bank checking account but that the insurers who issued the policies, United HealthCare Services, Inc. ("UHC") and Blue Cross and Blue Shield of Texas ("BCBS"), denied benefits that should have been covered by the policies. Although Plaintiff's theory of recovery is not entirely clear, Plaintiff appears to assert that VBG and Ms. Oliver fraudulently misrepresented his insurance coverage, took money from him to pay the policy premiums but diverted the money to their own use, and caused him to lose health insurance coverage that he was promised. Specifically, Plaintiff describes the alleged misconduct as follows:

> Defendants VBG, John Oliver, and Lois Oliver acted willfully, wantonly, . . . maliciously, and with intent to defraud Plaintiff, by collecting Plaintiff's premiums while frustrating Plaintiff's attempt to obtain the benefits of his coverage. Additionally or alternatively, Defendants VBG, John Oliver, and Lois Oliver owed Plaintiff a duty of good faith and fair dealing, and a duty to disclose the facts of BCBS's and UHC's assertions of non-coverage, as well as a duty to disclose that Defendants VBG, John Oliver, and Lois Oliver apparently failed to remit Plaintiff's premiums to Defendants BCBS and UHC. Defendants VBG, John Oliver, and Lois Oliver thereby gained an advantage to themselves, while acting as agents for Defendants BCBS and

---

[3] The movants filed a reply brief [Doc. No. 52] that was untimely under LCvR7.1(i) and, therefore, is disregarded.

[4] Consistent with federal practice, Plaintiff's pleading will be referred to as the complaint.

> UHC, by retaining and converting premiums and seeking to avoid the financial and reputational costs of their failures. The breaches by Defendants VBG, John Oliver, and Lois Oliver of their duties to Plaintiff operated to the prejudice and detriment of Plaintiff, who was deprived of the benefits of the coverage for which Plaintiff paid.

Compl. ¶ 5 (emphasis added). Plaintiff's alleged injuries from this conduct are: UHC and BCBS have denied coverage for a "need[ed] heart surgery with an estimated cost of $250,000;" "Plaintiff is likely to suffer irreparable harm (including the potential for worsened illness and even death) if Defendants UHC and BCBS fail to provide policy benefits;" and "Plaintiff has suffered and will suffer bodily injury due to the denial of policy benefits," "pain and mental anguish," and "additional consequential monetary damages, including increased costs of medical services that he has and will procure at higher-than-contract rates." Id. ¶¶ 6-8. UHC and BCBS timely removed the action to federal court based on federal diversity jurisdiction.

**Standard of Decision**

Plaintiff "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Where, as here, the issue is presented for decision on the basis of allegations and affidavits or written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted); *see Dental Dynamics*, 946 F.3d at 1228; *Shrader*, 633 F.3d at 1239. At this stage, the Court must accept "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint'" and "resolve any

3

factual disputes in the plaintiff's favor." *Shrader*, 633 F.3d at 1239 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)); *see Intercon*, 205 F.3d at 1247. However, "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *Shrader*, 633 F.3d at 1248. When a moving defendant submits an affidavit based on personal knowledge, the plaintiff must show a dispute of fact "through specific averments, verified allegations, or other evidence" (*id.*), such as "affidavits or other written materials." *Dental Dynamics*, 946 F.3d at 1228.

"To show personal jurisdiction over a nonresident in a diversity action, [the plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state – in this case Oklahoma – and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Id*. Under Oklahoma law, the personal jurisdiction inquiry is simply the due process analysis. *Id*. at 1229; *Intercon*, 205 F.3d at 1247; *see Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

**Jurisdictional Facts Shown by the Record**

Plaintiff is an Oklahoma resident and citizen. *See* Notice of Removal [Doc. No. 1], ¶ 2. VBG is a Texas limited liability company with one member, Ms. Williams, who is a resident and citizen of Texas. *See* Williams Aff. ¶ 2. VBG is an insurance broker that, according to Ms. Williams, "assisted individuals and companies in Texas in procuring

4

health insurance." *Id*. ¶ 4.  Ms. Williams states that VBG did not advertise or solicit business in Oklahoma, and had no office, agents, employees, or property in Oklahoma. *Id*. ¶¶ 5-7.

The individual movant, Ms. Oliver, is a resident and citizen of Texas. *See* Notice of Removal, ¶ 2; Oliver Aff. ¶ 2.  She has never been a member, officer, or manager of VBG.  Oliver Aff. ¶ 3.  Ms. Oliver was previously employed by VBG, but "[a]ll the services [she] performed for VBG were performed in Texas." *Id*. ¶ 7.  She does not own any property or have a bank account in Oklahoma. *Id*. ¶ 6.

According to Ms. Williams, VBG served as an insurance broker for CPR-ASO LLC ("CPR"), which was an administrative services organization.  CPR contracted with businesses and employers to provide services such as human resources, and offered contracting companies the option to participate in CPR's group health insurance plan. "American Recovery Association, a trade association headquartered in Irving, Texas, contracted with CPR for services and participated in CPR's group health insurance." *Id*. ¶ 11.  "Plaintiff Charles Wilson participated in CPR's group health insurance plan through American Recovery Association." *Id*. ¶ 12.

Plaintiff does not disagree with this factual presentation but, instead, provides evidence consistent with it.  Plaintiff presents the affidavit of Ms. Moore, who is identified as a former employee of his company, American Recovery Specialists, Inc.  Ms. Moore states that she assisted Plaintiff in finding, selecting, and acquiring health insurance based on information he received from the trade association, "American Recovery Associates [sic] on a health insurance program from Virtual Benefits Group." *See* Moore Aff. at 1

5

(¶ 1, unnumbered). Ms. Moore submitted paperwork to an employee of VBG, Teresa Tipton, and then confirmed that Ms. Tipton had received it and that insurance coverage from UHC would begin April 1, 2017. According to Ms. Moore, Ms. Tipton stated that VBG would draft monthly premiums from Plaintiff's account with RCB Bank in Edmond, Oklahoma, and Ms. Moore understood when the premium amounts were subsequently drafted by "True Benefits" that this was done by, or at the direction of, VBG.[5] On April 4, 2017, Ms. Moore again contacted Ms. Tipton when Plaintiff had not received insurance cards from UHC as promised, and Ms. Tipton advised Ms. Moore how to access and print the cards from UHC's website.

In November 2017, Ms. Oliver sent information by email about 2018 benefits enrollment. Ms. Moore and Plaintiff selected a plan, and informed Ms. Tipton by telephone in December 2017. However, on January 25, 2018, Plaintiff was denied coverage for a prescription medication. Ms. Moore called VBG and spoke with Ms. Tipton, who attributed the problem to a UHC computer error and promised that a supervisor would call. Ms. Oliver called and stated that VBG was communicating with UHC about the problem and "if they did not get it fixed soon, they would be moving [Plaintiff's] coverage to BCBS." *See* Moore Aff. at 2 (¶ 2, unnumbered). On January 31, 2018, Plaintiff was again denied coverage for a prescription medication, and Ms. Moore again called VBG and "was given the supervisor, Lois Oliver." *Id*. Ms. Oliver stated that

---

[5] VBG attempts to dispute this understanding with an additional affidavit of Brenda Moore submitted with its untimely, unauthorized reply brief. *See supra* note 3. Under the standard of decision, however, Plaintiff's evidence must be accepted as true for purposes of the Motion.

Plaintiff "could pay for the prescription out of pocket and [VBG] would wire transfer the amount for the prescription." *Id.* Plaintiff purchased the prescription and was reimbursed as promised.

In February 2018, Ms. Oliver informed Ms. Moore by email that Plaintiff's "coverage was changed to BCBS." *Id.* at 2 (¶ 3, unnumbered). Ms. Oliver first stated that Plaintiff's monthly premium would decrease, but a short time later, she said the cost "had actually increased and to advise if [Plaintiff] wished to keep this plan or discuss other options with Teresa Tipton." *Id.* Ms. Moore emailed Ms. Tipton to inquire about other plans but "never heard anything" until receiving an email from Ms. Oliver in March 2018 stating the new amount of monthly premiums.

In April 2018, Ms. Moore received a phone call from UHC stating that Plaintiff "was not covered with them as of September 30, 2017, and that they had received some prescription bills that [Plaintiff] would be responsible for." *Id.* at 2 (¶ 4, unnumbered). Ms. Moore tried to contact VBG, Ms. Oliver, and Ms. Tipton "but the phones had been disconnected and [she] received an automated email response stating that the VBG offices closed on April 1, 2018, and that the email address was no longer active." *Id.*

Ms. Moore states, supported by printed excerpts from an electronic account record [Doc. No. 51-2], that "VBG took out premiums from [Plaintiff's account] starting in March 2017 – March 2018, every month except January." *See* Moore Aff. at 2 (¶ 5, unnumbered). She also states that Plaintiff "did not have [health] insurance coverage in October – December 2017" even though he paid for it.

7

## Discussion

### A. Minimum Contacts – Legal Standard

The minimum contacts standard may be satisfied by showing general or specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1179-80 (2017). General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919) (alteration in *Daimler*). Specific jurisdiction requires that "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127) (internal quotation omitted and emphasis added in *Bristol-Myers*). Specific personal jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities.'" *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472); *see Intercon*, 205 F.3d at 1247; *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005).

Plaintiff relies solely on specific jurisdiction to establish personal jurisdiction over VBG and Ms. Oliver in Oklahoma. *See* Pl.'s Resp. Br. at 3, 4-5 ("While this Court may not have general jurisdiction over VGB [sic] or Mrs. Oliver, this Court has specific jurisdiction based on their contacts with Oklahoma."). In his brief, Plaintiff primarily cites

caselaw from Oklahoma courts so his federal jurisdictional theory is unclear, but he appears to utilize the analysis applied in contract-based actions under the Supreme Court's guidance in *Burger King*. *See id*. at 8.[6] In a contract case, the court examines the non-resident defendant's relationship with the forum state and its residents by looking to the parties' negotiations, their course of dealing, and future consequences of the contract. *See Dental Dynamics*, 946 F.3d at 1230 (discussing *Burger King* analysis).

Contrary to argument in Plaintiff's brief, however, he has not asserted a breach of contract claim against VBG or Ms. Oliver. Plaintiff's conclusory arguments that VBG or Ms. Oliver entered into an agreement with him to provide health insurance (*see* Pl.'s Resp. Br. at 3, 7, 8) are not supported by the allegations of his pleading or the facts stated in Ms. Moore's affidavit. Plaintiff elected to seek health insurance coverage under group policies issued by UHC and BCBS that were offered through a trade association and its contract with an administrative services organization. Although VBG, an insurance broker, assisted eligible participants in obtaining and accessing the available coverage, Plaintiff does not identify any contract between VBG or Ms. Oliver and himself for the services provided. Thus, the Court finds a contract-based analysis to be unhelpful and inapposite.

The Court finds that the proper framework for this case is one analyzing personal jurisdiction in tort-based actions under *Calder v. Jones*, 465 U.S. 783 (1984). *See Dental*

---

[6] Plaintiff also adopts "purposefully availed" language commonly used in contract cases. *See id*. at 6, 10; *see Dudnikov*, 514 F.3d at 1071 ("in contract cases . . . we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state"); *accord Anzures v. Flagship Rest. Group*, 819 F.3d 1277, 1282 (10th Cir. 2016).

9

*Dynamics*, 946 F.3d at 1231. The claims asserted in Plaintiff's complaint are based on alleged fraudulent conduct by VBG and Ms. Oliver. The Tenth Circuit has held that in a tort case "'purposeful direction' has three elements: (a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *See Niemi v. Lasshoffer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013)); *see also Dental Dynamics*, 946 F.3d at 1231; *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016); *Dudnikov*, 514 F.3d at 1072. "In addition, a plaintiff's injuries must 'arise out of [the] defendant's forum-related activities.'" *Anzures*, 819 F.3d at 1280 (quoting *Dudnikov*, 514 F.3d at 1071) (internal quotation omitted).

In *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court clarified the "purposeful direction" inquiry for specific jurisdiction in tort cases. "*Walden* teaches that personal jurisdiction cannot be based on [a defendant's] interaction with a plaintiff known to bear a strong connection to the forum state." *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014). Under *Walden*, 571 U.S. at 284, "the defendant's suit-related conduct must create a substantial connection with the forum State." This "defendant-focused" inquiry requires that "the relationship between a defendant and the forum State must arise out of contacts that the defendant *himself* creates with the forum State," and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284-85 (internal quotation omitted, emphasis in original); *see Anzures*, 819 F.3d at 1280. "[T]he plaintiff cannot be

10

the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see Dental Dynamics*, 946 F.3d at 1231-32.

## B. Minimum Contacts – Application to Plaintiff's Claims

Plaintiff asserts that VBG and Ms. Oliver have sufficient contacts with Oklahoma based on "their decision to do business with Plaintiff, an Oklahoma resident, along with the extensive phone and email correspondence and bank withdrawals." *See* Pl.'s Resp. Br. at 2. Plaintiff argues that by "engaging in substantial and ongoing telephone and email correspondence with [Plaintiff's] employees, and drafting monthly premiums from [Plaintiff's] bank account, VBG and Mrs. Oliver elected to subject themselves to jurisdiction of Oklahoma's Courts." *Id*. at 7 (footnote omitted). Plaintiff contends it was "entirely foreseeable that drafting monthly premiums from Plaintiff's bank in Oklahoma to pay for insurance, failing to remit those payments to the insurer, and failing to reimburse or notify Plaintiff of that failure would subject the individual or entity withdrawing that money to jurisdiction in Plaintiff's home state." *Id*.

Upon consideration of the circumstances shown by the motion papers and the case record, the Court finds that Plaintiff has failed to establish the existence of specific personal jurisdiction over VBG or Ms. Oliver in Oklahoma. Plaintiff does not allege or offer facts to show that VBG or Ms. Oliver engaged in any conduct that was expressly aimed at Oklahoma or created a substantial connection with Oklahoma. Plaintiff shows only communications with him or his employee that they initiated, with the exceptions that Ms. Oliver provided information regarding a renewal of his benefits enrollment and communicated with his employee about moving his coverage to BCBS. Other than

11

Plaintiff's allegation that VBG drafted insurance premiums from his checking account at a bank in Oklahoma, the only contacts with Oklahoma occurred because Plaintiff and his employee happened to be located here.  Assuming the bank drafts were made by VBG, Plaintiff is the one who authorized the drafts, and they occurred in Oklahoma solely because it was Plaintiff's banking location.  *See* Pl.'s Resp. Br. at 8 ("Plaintiff authorized VBG to draft those premiums").  The Court finds that these limited, Plaintiff-specific contacts between VBG or Ms. Oliver and Oklahoma are insufficient to show purposeful conduct directed at Oklahoma that would warrant an exercise of personal jurisdiction over them in this forum.

IT IS THEREFORE ORDERED that Defendants Virtual Benefits Group, LLC's and Lois Oliver's Motion to Dismiss [Doc. No. 47] is GRANTED based on a lack of personal jurisdiction over the moving defendants.  Plaintiff's action against Defendant Virtual Benefits Group, LLC (identified in the Notice of Removal as Virtual Benefits Group, Inc.) and Defendant Lois Oliver is DISMISSED without prejudice to refiling in a proper forum.

IT IS SO ORDERED this 25th day of February, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge